## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| VERRON FIELDS, | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| JOHN DOE #1, et al., | : | NO.  14-4573 |
| Defendants. | : | |

## M E M O R A N D U M

**Stengel, J.**                                                                              **June 4, 2015**

### I.     Background[1]

*Pro se* plaintiff Verron Fields is currently incarcerated in the State Correctional

Institution at Graterford, PA. He brings a host of claims against John Wetzel, Secretary of

the Pennsylvania Department of Corrections (PA DOC), for what he calls "systematic

degeneration, enslavement and predatory practices." He alleges a range of statutory and

constitutional violations.

First, Mr. Fields alleges that the defendant violates federal antitrust law because

the PA DOC has a monopoly over the goods and services consumed by the inmates.

Fields claims that the PA DOC unfairly uses its monopoly power by regularly increasing

prices and selling expired goods. Inmates allegedly are provided food "packages" which

must be pre-paid for by the inmate or an outside party. According to the plaintiff, the PA

DOC reduces the size of some of the items purchased after receiving payment for a larger

size, "and the PA DOC keeps the difference in price."

---

[1] The information contained in this section is taken from the complaint, unless otherwise noted.

Fields also claims that his due process rights have been violated. According to the plaintiff, the PA DOC has a contract with 'J-Pay' to receive all inmate funds sent by friends and families of inmates. Money orders sent to J-Pay must be made payable to J-Pay, thereby transferring ownership of the funds to J-Pay. Funds are placed in an interest bearing account and interest payments are divided by J Pay and the PA DOC. Allegedly, inmates and their families do not receive interest from these funds. He claims this taking of interest is "theft and fraud…in violation of [his and other inmates'] property and due process rights and federal banking laws."

Fields claims his equal protection and due process rights as a musician have been violated as well. Fields has requested permission to create and record music, form a fundraising organization, create an arts and music therapy program, and sell his music. Pointing to PA DOC policy that permits prisoners to sell artwork they have created, Fields claims that musicians should also be permitted to sell music. The prison has denied his requests because of "current policy." This policy is not clearly stated. The plaintiff also states that PA DOC policy does not allow certain inmates to sell their art work for "a price no less than $5.00."

Next, Mr. Fields asserts a theft/embezzlement claim. In 2009, the prison mistakenly debited Fields's account for sixty dollars. Fields's claims this money was never returned and was "illegally embezzled" from his account.

Lastly, Fields asserts claims under the Americans with Disabilities Act (ADA). Fields has a mental health condition which he treats with medication.[2] He also has a history of drug addiction. He claims that Wetzel and the PA DOC violate Title II of the ADA "by failing to provide adequate banking procedures to the mentally ill, by failing to employ fair business practices for the mentally ill, and by failing to provide programs, activities and services for the mentally ill, amounting to cruel and unusual punishment of the mentally ill." The defendant's denial of his requests for music therapy, *inter alia*, support these allegations. Fields also claims the grievance procedure's time-bar of 15 days is unreasonable given his mental illness and, therefore, violates the ADA. He filed a grievance regarding the 2009 mistaken debit after the fifteen-day grievance window expired. It was denied due to the time-bar.

Mr. Fields is seeking declaratory judgments that: 1) "there is a clear conflict of interest" for the PA DOC to have total control of inmates' business affairs; and 2) that the defendants have violated his rights under the ADA, 13th Amendment, and the 14th Amendment's equal protection and due process clauses. He also seeks the following injunctive relief: 1) that an independent agent be appointed to handle the inmates' business affairs; 2) that the defendant should "create opportunities for musicians to create and sell their work as other artists are allowed;" and 3) that the defendants "create an organization that represents the mentally ill and drug addicted offenders." The plaintiff also asks for any other relief the court deems appropriate.

---

[2] Mr. Fields has been diagnosed with paranoid schizophrenia and has been "taking psychotropic medication just about everyday since June of 2000."

On July 31, 2014, Mr. Fields filed this complaint against Wetzel and numerous

other defendants.[3] Claims against all defendants except Wetzel were dismissed without

prejudice on September 18, 2014.[4] On October 9, 2014, the defendant executed a waiver

of service.[5] On November 4, 2015, the plaintiff filed an amended complaint.[6] The

defendants move to dismiss the complaint under Rule 12(b)(6).[7]

## II.    Legal Standard

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure

for failure to state a claim upon which relief can be granted examines the legal

---

[3] Mr. Fields also filed a motion for class certification and for appointment of counsel. See Doc. No. 2 and 3. I denied the motion for class certification without prejudice because it was premature. See Doc. No. 4. The plaintiff's motion for appointment of counsel was also granted; the plaintiff's complaint was made available to the attorneys on the Prisoners Civil Rights Panel. No attorney has taken his case, however. He intends to proceed with the case *pro se*. See Doc. No. 5, 20, 21, 22, 23.

Mr. Fields asserts his claims in the original and amended complaint as a class action.

[4] See Doc. No. 8.

[5] See Doc. No. 11.

[6] Most of the claims in the original complaint were included in the amended complaint. The amended complaint essentially simplified and reformatted those claims (i.e. put into numbered paragraphs) in order to more fully comply with the court's rules. The amended complaint added the claims related to the plaintiff's music-related privileges.

[7] See Doc. No. 15. The defendant also moves to strike the amended complaint because it was filed without leave of court. The defendant offers no other reason or caselaw to support this request. The plaintiff is permitted to file an amendment to his complaint as a matter of right 21 days after serving it. FED. R. CIV. P. 15 (a)(1)(A). Since the waiver of service was executed on October 9, 2014, the plaintiff would have had to file the amended complaint before October 30, 2014, in order to do so "as a matter or right" (i.e. without leave of court). See FED. R. CIV. P. 15(a). The plaintiff's amended complaint was filed on November 4, 2014 when it was received at this courthouse. It appears that he sent the amended complaint on November 2, 2014, and it was mailed on November 3, 2014. See Doc. No. 14. While it is true the plaintiff should have filed his amended complaint several days earlier, I also recognize that the plaintiff may not have been notified that the waiver of service was executed until several days after the waiver was filed. I am required to freely give leave "when justice so requires." FED. R. CIV. P. 15 (a)(2). Under these circumstances, I will consider that plaintiff's amendment to be validly filed. I will decline to strike the amended complaint.

The defendant addressed the validity of the claims added in the amended complaint. I see no prejudice to the defendant in declining this request. As I explain below, these claims are procedurally deficient.

sufficiency of the complaint.[8] Conley v. Gibson, 355 U.S. 41, 45-46 (1957). The factual

allegations must be sufficient to make the claim for relief more than just speculative. Bell

Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). In determining whether to grant a

motion to dismiss, a federal court must accept all factual allegations in the complaint as

true and draw all reasonable inferences in favor of the plaintiff. Id.; see also D.P. Enters.

v. Bucks County Cmty. Coll., 725 F.2d 943, 944 (3d Cir. 1984).

The Federal Rules of Civil Procedure do not require a plaintiff to plead in detail all

of the facts upon which she bases her claim. Conley, 355 U.S. at 47. Rather, the Rules

require a "short and plain statement" of the claim that will give the defendant fair notice

of the plaintiff's claim and the grounds upon which it rests. Id. The "complaint must

allege facts suggestive of [the proscribed] conduct." Twombly, 550 U.S. at 564. Neither

"bald assertions" nor "vague and conclusory allegations" are accepted as true. See Morse

v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997); Sterling v. Se. Pa.

Transp. Auth., 897 F. Supp. 893 (E.D. Pa. 1995). The claim must contain enough factual

matters to suggest the required elements of the claim or to "raise a reasonable expectation

that discovery will reveal evidence of" those elements. Phillips v. County of Allegheny,

515 F.3d 224, 234 (3d Cir. 2008) (quoting Twombly, 550 U.S. at 556).

A court "may dismiss a complaint only if it is clear that no relief could be granted

under any set of facts that could be proved consistent with the allegations." Brown v.

---

[8] In deciding a motion to dismiss, the court should consider the allegations in the complaint, exhibits attached to the complaint, and matters of public record. See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993). The court may also consider "undisputedly authentic" documents when the plaintiff's claims are based on the documents and the defendant has attached copies of the documents to the motion to dismiss. Id.

Card Serv. Ctr., 464 F.3d 450, 456 (3d Cir. 2006)(quoting Hishon v. King & Spalding,

467 U.S. 69, 73 (1984)).

When a plaintiff proceeds *pro se*, the complaint should be construed liberally.

Johnson v. United States, 469 Fed. Appx. 79, 80 (3d Cir. 2012)(citing Estelle v. Gamble,

429 U.S. 97, 106 (1976)).

### III.   Exhaustion of Administrative Remedies under the Prison Litigation Reform Act

Actions regarding prison conditions brought by prisoners under federal law are

barred until the prisoner has exhausted available administrative remedies under the Prison

Litigation Reform Act (PLRA). 42 U.S.C. § 1997e(a);  Woodford v. Ngo, 548 U.S. 81,

93 (2006); Spruill v. Gillis, 372 F.3d 218, 222 (3d Cir. 2004). To survive a motion to

dismiss, Mr. Fields must have exhausted the grievance procedures on each of his claims.

It is not clear that Mr. Fields has done so.

The plaintiff addressed the exhaustion of only the embezzlement claim in his

complaint. He states that he filed a grievance on this claim, but after the fifteen (15) day

deadline. It was denied as being time-barred. He does not allege that he appealed this

decision through the final two rounds of appeals in order to exhaust the claim or to

explain why it was untimely. He did not follow proper procedure in addressing this

claim.[9] This claim is procedurally defaulted. See Spruill, 372 F.3d at 222. Inmates who

---

[9] See Spruill, 372 F.3d at 232 ("DC-ADM-804 Part VI provides for three stages of review within Pennsylvania's Grievance System: Initial Review (DCADM-804 Part VI.B), which addresses the inmate's filed grievance; the first appeal from the Initial Review, known as Appeal to Facility Manager (DC-ADM-804 Part VI.C); and a second and final appeal, the Appeal to Secretary's Office of Inmate Grievances and Appeals (DC-ADM-804 Part VI.D).").

While the plaintiff claims that the fifteen (15) day timeline is unreasonable for a person with mental illness, he does not explain how he was prevented from filing his grievance. See Oliver v. Moore, No. 04–1540, 145 Fed.Appx. 731,

fail to fully complete the prison grievance process are barred from subsequently litigating claims in federal court. See, e.g., Bolla v. Strickland, No. 08-3466, 304 F. App'x. 22, 23 (3d Cir. Dec. 23, 2008); Jetter v. Beard, No. 05–5184, 183 F. App'x 178, 181 (3d Cir. May 31, 2006); Booth v. Churner, 206 F.3d 289, 300 (3d Cir. 2000). The embezzlement claim will be dismissed with prejudice.[10]

The defendant argues that all of the plaintiff's claims are procedurally defaulted; however, the defendant addresses only the procedural default of the plaintiff's antitrust claims. The plaintiff states in the "sworn affidavit" attached to the complaint that he filed a grievance about his antitrust claims on September 22, 2013. The defendant confirms the filing of this grievance on this date and topic. The defendant shows that the plaintiff did appeal the denial of this grievance (#478676) at both the intermediate and final appeals levels. See Doc. No. 15, Ex. 3. However, the defendant argues this claim was already procedurally defaulted because the plaintiff had filed a previous grievance related to this same issue in January 2013 (#443932). See id. at Ex. 2. That previous grievance was denied, and the plaintiff appealed the rejection. Id. That appeal upheld the original decision. The plaintiff did not appeal the previous grievance to the final level.

---

734-35 (3d Cir. 2005)(explaining how a prisoner's inability to pursue administrative remedies as caused by prison officials may render administrative remedies "unavailable")(discussing Camp v. Brennan, 219 F.3d 279 (3d Cir.2000)). This allegation speaks more to the plaintiff's Title II ADA claim than to the availability of his administrative remedies.

[10] Even if the embezzlement claim were not procedurally defaulted, it would still be dismissed with prejudice. Fields has alleged that the defendant violated 42 U.S.C. § 1983 by embezzling sixty-dollars from his inmate account in 2009. In actions under 42 U.S.C. § 1983, federal courts apply the state's statute of limitation for embezzlement claims. See Sameric Corp. of Delaware v. City of Phila., 142 F.3d 582, 599 (3d Cir. 1998)(citing Wilson v. Garcia, 471 U.S. 261, 276–78 (1938)). Pennsylvania has a two-year statute of limitation to recover from the unlawful taking of personal property. 42 Pa. C.S.A. § 5524. The statute of limitations has expired for this claim because the alleged embezzlement took place five years before the filing of this action.

The second grievance filed in September was denied because the plaintiff had filed

the previous grievance. It was also denied because the plaintiff did not claim he was

harmed by the policy nor was he allowed to assert a grievance on behalf of a group of

inmates. The plaintiff specifically explained in his appeal how his September grievance

was different than his January one. Nonetheless, the original grievance decision was still

upheld on appeal, because the plaintiff had not alleged specific harm related to the

procedure and because he had presented the same issue previously. The final appeal

decision did not address the plaintiff's argument that the September grievance differed

from the January grievance.

Prisoners are required to "properly" exhaust their claims, meaning "a prisoner

must complete the administrative review process in accordance with the applicable

procedural rules, including deadlines, as a precondition to bringing suit in federal court."

Woodford v. Ngo, 548 U.S. 81, 93 (2006). The applicable procedural rule, DC-ADM 804

§ 1.A.16, states:

> Any grievance issue that has been or is currently being addressed will not
> be readdressed in a subsequent grievance. Any concern disputing previous
> grievances, appeal decisions or staff members who rendered those decisions
> should be addressed through the appeal process….[11]

DC-ADM 804 does not explain further when a grievance is barred from refiling

because the "issue" has already been addressed. In looking at the two grievances, I

cannot say they necessarily cover the same issue. In the January grievance, the

---

[11] See also Spruill v. Gillis, 372 F.3d 218, 233-35 (3d Cir. 2004)(considering DC-ADM in order to determine if
procedure was followed). I note that this language is taken from the 2015 version of this policy. I could not find the
language of the 2013 policy, which would have governed the grievances in question.

plaintiff challenged the pricing policy (i.e. "price fixing") related to the "monopolization" the PA DOC has over the prisoners' goods and services. In the September grievance, he challenged the conflict of interest created by the PA DOC's dual role as both controller of the inmates' business affairs and their caretaker.[12] They do appear to address two different "issues."

Nonetheless, neither grievance appears to have been properly exhausted. The plaintiff did not appeal the January grievance to the final level. The September grievance was brought on behalf of a group of prisoners and did not allege individual harm, in compliance with DC-ADM 804.[13] Because the plaintiff did not properly exhaust his claims as to these issues, his antitrust claims will also be dismissed with prejudice.[14]

---

[12] Fields's grievance 443932 alleges that the PA DOC was abusing its monopoly over the commissary. Grievance 478676 readdresses the PA DOC's monopoly power, and alleges that the PA DOC's control over the inmates' financials creates a conflict of interest. Specifically, Fields states that a conflict is created when the PA DOC limits inmates' ability to make commercial and financial decisions. This conflict creates a pecuniary incentive for the PA DOC to make decisions that benefit the department, rather than the inmates.

[13] See DC-ADM 804 § 1.A.17 ("Each grievance must be presented individually. A grievance submitted by one inmate for **another inmate** or a group of inmates is prohibited and will not be processed.")(emphasis in original); DC-ADM 804 § 1.A.14 ("An inmate who has been personally affected by a Department and/or facility action or policy will be permitted to submit a grievance.").

[14] The plaintiff has not alleged an injury, giving him standing to bring these claims. See, e.g., Bocobo v. Radiology Consultants of South Jersey, P.A., No. 07-3142, 477 Fed.Appx. 890, 896 (3d Cir. Apr. 17, 2012). He does not allege facts showing that he personally purchased items and then got less than he paid for. His allegations are vague and conclusory and should be dismissed. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007).

These claims are being dismissed with prejudice because they do not state a claim under Rule 12(b)(6). Fields has alleged violations of federal antitrust law because the PA DOC has a monopoly over the goods consumed by inmates. The Sherman Act was enacted in 1890 to criminalize certain anticompetitive behavior. 15 U.S.C. § 1. In 1914, the Clayton Act later created a private right of action for violations of the Sherman Act. See In re Mushroom Direct Purchaser Antitrust Litigation, 655 F.3d 158, 165 (3d Cir. 2011); 15 U.S.C. §§ 15, 26.

PA DOC limits what goods inmates can buy, as explained in the DOC's policy DC-ADM 815 (effective 2009). The defendant would be exempt from Sherman Act violations under Parker v. Brown. In Parker, the Court held that the Sherman Act does not restrain state action or official action directed by the state legislature. 317 U.S. 341, 351

(1943). "When a state clearly acts in its sovereign capacity it avoids the constraints of the Sherman Act and may act anticompetitively to further other policy goals." Mariana v. Fisher, 338 F.3d 189, 201 (3d Cir. 2003)(quoting A.D. Bedell Wholesale Co. v. Philip Morris Inc., 263 F.3d 239, 255 (3d Cir. 2001)). Parker immunizes Pennsylvania's official actions from federal antitrust liability. However, the policy restricting the goods available to Pennsylvania's prisoners, DC-ADM 815, was created by prison administrators not by the state's legislature.

When it is unclear whether an act is covered by Parker immunity, such as when a state agency enacts an anti-competitive policy, courts are instructed to use the two-pronged test set out in California Retail Liquor Dealers Ass'n. v. Midcal Aluminum, Inc., 445 U.S. 97, 104 (1980). See A.D. Bedell Wholesale Co., 263 F.3d at 255-56; S. Motor Carriers Rate Conference, Inc., v. United States, 471 U.S. 48, 57 (1985). To qualify for Parker immunity under Midcal, the challenged restraint must be: (1) clearly articulated and affirmatively expressed as state policy; and (2) actively supervised by the state. A.D. Bedell Wholesale Co., 263 F.3d at 259-60; S. Motor Carriers Rate Conference, Inc., 471 U.S. at 73-74.

Midcal's first prong is satisfied if "anticompetitive effects would logically result" from a regulatory scheme created by state statute. Town of Hallie v. City of Eau Claire, 471 U.S. 34, 42 (1985). The legislature need not expressly state that it intends actions taken pursuant to statutorily delegated authority to have anticompetitive effects. Id. The PA DOC is an administrative agency created by the legislature and only has those powers conferred to it by statute. See Small v. Horn, 554 Pa. 600, 609 (1998). The "[DOC's] authority to make rules concerning the management of state correctional institutions can fairly be implied from its enabling statute." Id. (citing 71 P.S. § 310-1). As Secretary of Corrections, Defendant Wetzel has also been vested "powers and duties related to the administration, management and supervision of penal and correctional facilities, programs and services." 71 P.S. § 310-1.

Defendant Wetzel's statutory duty to manage and supervise the PA DOC includes identifying and enacting policies aimed toward the needs of Pennsylvania's prisons. Those policies may significantly restrict prisoners' rights. See Small, 554 Pa. at 610–11 (explaining that "[b]ecause of the unique nature and requirements of the prison setting, imprisonment 'carries with it the circumscription or loss of many significant rights ... to accommodate a myriad of institutional needs ... chief among which is internal security.'")(internal citation omitted). Pursuant to the authority vested by 71 P.S. § 310-1 and other relevant statutes, Pennsylvania's Secretary of Corrections promulgated policy statement DC-ADM 815. This policy statement, which became effective in May 2009, announced that "limitations on the amount and variety of inmate property may be imposed for security, hygiene, and/or safety reasons . . ." This policy is advanced by restricting the goods available to inmates through the commissary.

By granting the Secretary of Corrections broad power to manage its prisons, the Pennsylvania Legislature implicitly granted him discretion to decide that a free-market for goods is contrary to the high degree of regulation needed for safe institutions. Limiting the goods inmates may possess and the vendors through which goods can be acquired is squarely within the Secretary's discretion. See Small, 554 Pa. at 611–12 (holding that a DOC decision to ban inmate purchases of civilian clothing from previously authorized outside vendors is "inherently committed to the agency's discretion . . . "). Pennsylvania's statutory scheme for prison regulations could logically result in anticompetitive actions to ensure effective prison management. The first prong of Midcal is met.

The second prong of the Midcal test is whether the challenged restraint is actively supervised by the state. S. Motor Carriers Rate Conference, Inc., 471 U.S. at 73–74. The state supervision requirement serves as an evidentiary hurdle to "prevent a State from circumventing the Sherman Act's proscriptions 'by casting ... a gauzy cloak of state involvement over what is essentially a private price-fixing arrangement.'" Town of Hallie, 471 U.S. at 46 (citing Midcal, 445 U.S. at 106). "The essential inquiry of the 'actively supervised' prong is to determine if the anticompetitive scheme is the state's own." A.D. Bedell Wholesale Co. v. Philip Morris Inc., 263 F.3d 239, 260 (3d Cir. 2001)(quoting FTC v. Ticor Title Ins. Co., 504 U.S. 621, 635 (1992)).

Here, the anticompetitive restriction on the procurement of goods is clearly expressed in policy directives issued by the Secretary of Corrections. DC-ADM 815 specifies "with a high degree of detail what items prisoners may purchase, in what quantities the items may be purchased, and through what mechanisms the items may be purchased (e.g., from the commissary's inventory or by special order through the commissary)." Wheeler v. Beard, No. CIV.A. 03-4826, 2005 WL 1217191, at *5 (E.D. Pa. May 19, 2005). The DOC policy's specificity, public availability, and

The plaintiff states in his "sworn affidavit" that he has "made requests" about his other various claims. The defendant offers evidence that the plaintiff has filed sixty-one grievances between July 2008 and December 2013. See Doc. No. 15, Ex. 1. However, the descriptions of these grievances, presented in a list format, are vague and simply described as "commissary," "due process," "conditions," etc. This information is not enough for me to determine whether the grievances include those claims in the amended complaint. "Exhaustion is no longer left to the discretion of the district court, but is mandatory." Woodford v. Ngo, 548 U.S. 81, 83 (2006)(citing Booth v. Churner, 532 U.S. 731, 739 (2001)). I will dismiss the plaintiff's remaining claims without prejudice. He will be permitted leave to file an amended complaint, showing that he has exhausted his administrative remedies.[15]

---

detail, show that these restraints are not a "cloak of state involvement" over a private price-fixing scheme. Rather, they are the product of an actively supervised state program to ensure the safety of Pennsylvania's prisons. Midcal's second prong is satisfied.

Since both prongs of Midcal are met, Defendant Wetzel's decisions concerning the commissary would be immune from antitrust liability under Parker. See also Wheeler v. Beard, No. CIV.A. 03-4826, 2005 WL 1217191, at *4-5 (E.D. Pa. May 19, 2005); Guyer v. Frame, NO. 85–3808, 1985 WL 4984, at *2 (E.D. Pa. Dec. 20, 1985).

[15] Given the evidence provided by the defendant, that the plaintiff has filed several grievances which may address his claims, amendment seems more appropriate then outright dismissal. See Grayson v. Mayview State Hosp., 293 F.3d 103, 114 (3d Cir. 2002)(directing courts to allow *pro se* prisoners leave to amend "unless amendment would be inequitable or futile").

Even if the plaintiff had pled exhaustion, his claims also would have been dismissed because he does not offer enough factual allegations to state his claims. As the defendant explains in his motion to dismiss, the plaintiff has failed to allege the elements of a Title II of the ADA, specifically that fact that he requested an accommodation. He also has not shown that he has used J-Pay and that interest has been withheld from him. Therefore, he cannot establish his standing to bring this claim. Assuming the plaintiff can show he has exhausted his administrative remedies, the plaintiff should also cure these factual deficiencies if he files his second amended complaint.

## IV.    Conclusion

For the foregoing reasons, I will dismiss the plaintiff's antitrust claims and embezzlement claim with prejudice. The plaintiff's remaining claims are dismissed without prejudice. The plaintiff is granted leave to file a second amended complaint.

An appropriate Order follows.